[No. 15997.   Department Two.   February 9, 1921.]

# E. M. SKOUG, *Respondent*, v. LATOUR CREEK RAILROAD COMPANY, *Appellant*.[1]

CONTRACTS (110, 154)—MODIFICATION — MERGER — BREACH — ACTS CONSTITUTING.   Whether a contract for railroad construction work was indefinite or not, the parties had a right to modify it, hence it is not a breach to fail to perform the original contract but the breach is by the party failing to perform his part of the modified contract.

CONTRACTS   (157,   159)—BREACH—WAIVER—RIGHTS ON PARTIAL PERFORMANCE.   Where railroad contractors notified the company that they could not complete the contract, whereupon the company agreed to modify the contract upon plaintiff's purchasing his partner's interest, which was done and plaintiff resumed the work under the modified contract, he is entitled to the reasonable value of the work done.

Appeal from a judgment of the superior court for Spokane county, Blake, J., entered April 5, 1920, upon findings in favor of the plaintiff, in an action to recover for labor performed in constructing a logging railroad, tried to the court.   Affirmed.

*McWilliams, Weller & Brown,* for appellant.

*Ed. B. Powell,* for respondent.

MOUNT, J.—This action was brought by E. M. Skoug against the Latour Creek Railroad Company, to recover for work and labor done in the partial construction of a logging railroad in the state of Idaho.   Upon issues joined, the case was tried to the court without a jury, and resulted in findings and judgment in favor of the plaintiff for $1,873.42.   The defendant has appealed from that judgment.

The facts may be briefly stated as follows:   On November 4, 1916, Mr. Skoug and Mr. J. G. Bromley,

[1]Reported in 195 Pac. 219.

co-partners doing business as the Inland Construction
Company, entered into a contract with the appellant
for the construction of a logging railroad. This con-
tract was in writing and provided, among other things,
that the work should be done by the Inland Construc-
tion Company for a consideration of ten thousand dol-
lars to be paid in payments as the work progressed.
After the construction company had entered upon the
work, some difficulty arose between the construction
company and the railroad company. The construction
company ceased work and Mr. Skoug advised the rail-
road company that he could not proceed with the con-
tract. Thereupon the president of the railroad com-
pany agreed with Mr. Skoug that, if he would purchase
the interest of his partner in the contract, the contract
would be modified so that he could proceed and finish
the work.

On this understanding, Mr. Skoug purchased the
interest of Mr. Bromley in the contract, which was
assigned to Mr. Skoug. Thereupon the president of
the railroad company wrote a letter, as follows, to
Mr. Skoug:

"Cataldo, Idaho, Sept. 21st, 1917.

"On condition that E. M. Skoug will continue and
prosecute the work of construction of the Latour
Creek Railroad without delay and will obtain some
men on contracts approved by the Latour Creek
Railroad Company to help him finish said construc-
tion work, the Latour Creek Railroad Company
hereby agrees to keep their engineer on the work at
all times to direct and pass upon the work as done
with power to make such changes in the plans of con-
struction as is necessary under present conditions to
save unnecessary labor and expense and to avoid dupli-
cation of the work. Also that they will furnish la-
borers and a cook and will furnish supplies as needed
along the line as the work progresses and will furnish
a man to run the motor car to haul ties and materials,

and after the ties and track are laid they agree to furnish sufficient money to complete the job. The cost of the above to be deducted from the contract price. As an offset to damage done to the Latour Creek Railroad by the log drives of the spring of 1917, the Latour Creek Railroad Company agrees to pay extra over and above the contract price the cost of repairing and replacing and putting in condition to be accepted by the Railroad Company all grading, clearing, filling and cribbing damaged and caused by the logging operations and log drives on Latour Creek during spring of 1917, on entire road, and also to pay for replacing all timber destroyed or driven out by the spring drive of 1917. Said cost shall be determined by keeping the time separate from other work by contractor and to avoid disputes about said time the Railroad Company shall check said time each day from contractor's time book, wages to be $4.50 per day for contractors and wages actually paid to the other men.

"Latour Creek Railroad Company,
"By L. W. Butler, Its President."

Pursuant to this letter, the respondent again entered upon the work and continued it for a time, when the appellant neglected or refused to furnish laborers and a cook, and failed or refused to furnish supplies as needed along the line. Because of that failure, it was impossible for the respondent to continue the work, and he thereupon abandoned the work and brought this action.

A number of errors are assigned by the appellant, but these errors are discussed under the following heads: (1) That the original contract was an entire or indivisible contract and was breached by the respondent, and (2) that the original contract was not modified by the letter hereinabove quoted.

It is true that the original contractors, after they had entered into the performance of the work, ceased work thereon and threatened to abandon the contract. Their excuse for this was that the appellant had bor-

rowed money from them which appellant had agreed to return as it might be needed for the work; that the appellant failed to return the money, and for that reason they were unable to proceed with the work and had to abandon the contract. If the appellant was not at fault and had stood upon the original contract, there might be some reason for contending that the contract is indivisible, but appellant did not stand upon the original contract. Appellant agreed with the respondent that, if he would purchase the interest of his co-partner in the contract, appellant would modify the terms of the original contract and permit the respondent to proceed to finish the work. The respondent relied upon this promise, purchased the interest of his co-partner in the contract, and thereupon the original contract was modified as stated in the letter above quoted. It is clear from this letter that the original contract price was maintained and that the respondent was required to finish the work and in addition thereto to do some extra work; and in consideration for this, the appellant agreed to furnish laborers and a cook and the needed supplies along the line of the work as it progressed. Appellant also agreed to furnish sufficient money to complete the work. The respondent entered upon his duties under the contract as modified by that letter, and after he had proceeded for a time, the appellant neglected or refused to furnish the laborers and the cook and the needed supplies so that the respondent was unable to finish the work. The breach of the contract, therefore, was the breach of the appellant rather than of the respondent.

At the trial of the case, the court made an accounting between the parties and determined therefrom that the respondent was entitled to the amount for which judgment was entered. The record is amply sufficient

to sustain the findings of the court upon the question of the amount due respondent.

We are satisfied that there is no substantial merit in the contentions of the appellant that the original contract was an indivisible one, for it is plain that, whether it was indivisible or not, the parties to it had a clear right to modify it in any respect they desired. They did modify it by the subsequent written agreement and the respondent renewed work under that agreement. He is clearly entitled to the reasonable value of the work which he has done.

Judgment affirmed.

HOLCOMB, MITCHELL, MAIN, and TOLMAN, JJ., concur.